84

Patricia Susanne WING *v.* Larry Dale WING

CA 83-235                                    671 S.W.2d 204

Court of Appeals of Arkansas
Division I
Opinion delivered June 27, 1984

*Coffelt, Burrow & Sawyer,* for appellant.

*Paul L. Davidson,* for appellee.

MELVIN MAYFIELD, Chief Judge. The parties in this case were divorced by the Benton County Chancery Court March 10, 1983. They have a child, Misty, who was born April 1, 1982. The decree provides that custody of the child is awarded to each party for a period of six months each year until she begins to attend school on a full-time basis, and at that time primary custody shall be vested in the mother. Specific visitation rights are fixed for the noncustodial parent both before and after the child begins to attend

school, with alternative visitation arrangements in the event both parents do not continue to live in Benton County, Arkansas.

The mother appeals asking that we reverse the split custody arrangement and award her full custody; she also wants a change in regard to support payments by the father. The appellee asks only that we affirm the chancellor's decision.

The evidence shows that the parties had been married approximately two years when they separated. Appellant had been married five times previously, twice to the same man, and had given up a child by a previous marriage to its father because she "thought that it was best" for the child. She was twenty-eight years old at the time of trial. She was not then employed, but said she had been a nurse's aide and that she wanted to move back to Texas, which was her home state and where she lived when she met the appellee. She thought she could find employment there; she would live with her mother and step-father; and her mother, who did not work, would help take care of Misty.

Appellant's friend, Jenny Burr, testified that appellant was hardworking and not an abusive or profane person. She said appellant was a good mother and took very good care of her child. She admitted that appellant had not told her the truth once or twice and she was aware of times when appellant had lied to her husband to get money from him. She denied making the statement that appellant was too unstable to care for Misty but later admitted that she might have said it around the time appellant and appellee separated because the appellant was upset at that time over the separation. The witness thought that appellant took good care of Misty, but said appellee shared in that care and saw nothing objectionable in the way he took care of the child.

The appellant's mother testified that appellant and Misty were welcome. She said it would be up to the stepfather to support them financially because she had no money of her own. The stepfather testified that he would let them move in until appellant found a job and could get a

place of her own, but he said at "this point" in his life he would not raise the child for appellant as he did not believe that would be in either his or the child's best interest.

In the appellee's behalf, there was testimony that he was a fine upstanding young man who loved his daughter and was very good at taking care of her. He had lived in Benton County for about ten years. His parents had been married twenty-nine years and had three children of which the appellee was the oldest. They had lived in the same two-story farm house with three bedrooms on 100 acres of land for all those ten years. They had a married daughter who lived with her husband in a house trailer right next to the farm house, and a younger son who was still living at home. The appellee had been granted temporary custody of Misty and they had been living with his parents while awaiting the trial of this suit. His mother testified that she would be glad to assist in caring for Misty. She was employed but said she could devote Saturdays and Sundays to Misty and would be willing to give up her employment entirely to help take care of the child. She thought her son could provide Misty the physical, emotional, and spiritual stability she needed, but had reservations about the appellant's ability in that regard.

There was evidence that the appellee held a full-time job driving a truck and delivering feed. He also raised cattle and helped his father on the farm. Several witnesses testified that the appellant was kind and loving toward Misty and looked after all her needs. During appellee's temporary custody, in addition to the father, grandparents, and aunt, Misty had been cared for at times in a day care center.

The appellant quotes from *Drewry v. Drewry*, 3 Ark. App. 97, 101, 622 S.W.2d 206 (1981), where it states that "our courts have held that divided custody of a minor child is not favored unless circumstances clearly warrant such action," and *DeCroo v. DeCroo*, 266 Ark. 275, 276, 583 S.W.2d 80 (1979), where it was said "it is often in the best interest of the children, especially when they are very young, that they be awarded to the mother." The appellant also suggests that the trial court "may have stepped into the quagmire this court warned chancellors of, when [a concurring opinion]

stated in *Drewry, supra,* that it is hoped any idea that the tender years doctrine has been repealed will not cause chancellors to think they must divide the custody of children in order to avoid the claim that there was a preference based on gender."

On the other hand, the appellee notes that Act 278 of 1979, Ark. Stat. Ann. § 34-2726 (Supp. 1983), mandates that custody should be made "solely in accordance with the welfare and best interest of the children" and "without regard to the sex of the parent," and he relies upon *Drewry* for its affirmance of a split custody award and for the statement of the prevailing opinion which said that Act 278 "abolished" the tender-years doctrine.

The reliance by both parties, in well-written briefs, upon *Drewry* makes it appropriate to suggest that the four separate opinions handed down in that case may indicate that the court was more fractured than it really was. Despite the different approaches, the opinions agree that the goal involved is the welfare and best interest of the child. Either expressly or by implication, each opinion also recognizes the superior position of the chancellor to see the witnesses, hear the testimony, and find the facts. It is our duty on appeal to affirm the chancellor's findings of fact unless they are clearly against the preponderance of the evidence. ARCP Rule 52(a). In the instant case, the precise custodial issue before us is whether the judge's failure to grant full custody to the appellant is clearly against the preponderance of the evidence. Applying the law to the evidence in the case, we hold that the judge's decision on this issue was not clearly wrong.

Appellant also contends that the chancellor erred in regard to the child support provision made by the decree. It is provided that after the child begins attending school full-time, the father shall pay the mother (who the decree contemplates will at that time have full custody) child support in accordance with the family support chart then used by the court; except payment shall be abated during any period of a week or more that the child is visiting with the father. Nothing is said about support until the child begins

full-time school attendance. Appellant says this is unfair to both parties since the child might have a series of injuries or catastrophic illnesses and the non-custodial parent would have no obligation to assist financially. The appellee replies that both parties are required to share the care of the child on an equal basis and, in any of the events assumed by appellant, there is no indication in the record that a different appropriation would be applicable. We agree that the intent of the decree is to place the financial burden of Misty's care upon both parties equally. The evidence before the chancellor at the time of the decree supports that decision.

Affirmed.

CLONINGER, J., agrees.

CRACRAFT, J., concurs.

GEORGE K. CRACRAFT, Judge, concurring. By concurring in this case I make no departure from the views I expressed in the majority opinion in *Hansen* v. *Hansen*, 11 Ark. App. 104, 666 S.W.2d 726 (1984) and my dissent in *Williams* v. *Williams*, 12 Ark. App. 89, 671 S.W.2d 201 (1984). The only issue raised on this appeal was whether the chancellor's failure to grant full custody to the mother was clearly erroneous. There was no cross-appeal challenging the sufficiency of the evidence to support a finding that divided custody was in the best interest of the child or that full custody should have been awarded to the father. Even on *de novo* review we do not reverse on issues not raised or argued on appeal. I concur for no other reason.