Malika L. STEPP *v.* Winifred T. GRAY

CA 96-730 947 S.W.2d 798

Court of Appeals of Arkansas
Division IV
Opinion delivered July 2, 1997

*Ogles Law Firm, P.A.*, by: *John Ogles*, for appellant.

*Robert Batton*, for appellee.

ANDREE LAYTON ROAF, Judge. Malika L. Stepp appeals from an order increasing the child-support payments made to her by the appellee, Winifred T. Gray. She argues that the chancellor erred in: 1) calculating the amount of child support; 2) making the increase retroactive for only six months; 3) allowing Gray to pay a part of the child support in an annual, lump-sum payment; and 4) denying her request for attorney fees and expert witness fees. We agree that the chancellor erred by excluding the amount of a depreciation deduction reflected on Gray's income tax return in calculating the child support, and reverse and remand on the first

issue. We affirm the chancellor on the remaining three issues raised.

Stepp and Gray were divorced in 1991. Stepp was awarded custody of the parties' three minor children, and Gray was ordered to pay child support of $1075 per month. On December 1, 1994, Stepp petitioned for an increase in child support, alleging, among other changes in circumstances, that Gray was earning more from his business than when the prior support order was entered in 1991.

At the hearing held on September 11, 1995, Stepp placed into evidence the fact that Gray had acquired a dozen rental properties since the divorce, and as a result had substantially increased his after-tax income. On December 12, 1995, the chancellor entered a letter order raising Gray's child-support obligation from $1,075 to $3,054.46 per month. On January 5, 1996, Gray filed a motion to reconsider, and after a February 13, 1996, hearing in which the chancellor accepted additional evidence, he lowered Gray's child-support obligation to $2,418.56 per month, retroactive for six months. The chancellor also denied Stepp's motion for attorney and expert-witness fees.

After Stepp's motion to reconsider this order was deemed denied, Stepp timely filed her notice of appeal. There was a subsequent order entered on April 29, 1996, which apparently allowed Gray to pay a part of his regular support in a lump-sum, end-of-the-year annual payment. This order is not abstracted and does not appear in the record; however, Stepp has abstracted her notice of appeal from this order.

### 1. Child-Support Calculation

Stepp first argues that the chancellor erred in calculating Gray's child-support obligation because he: 1) allowed a $34,861 depreciation deduction on Gray's rental properties; 2) failed to consider the fact that Gray received a company car; 3) failed to consider that Gray received income from seventeen rent houses; and 4) allowed a self-employed health-insurance tax deduction of $793. Stepp urges that this court remand to the chancellor for him to consider all the factors stated in the 1993 Supreme Court

Per Curiam Order setting forth child-support guidelines. Stepp further cites *Black v. Black*, 306 Ark. 209, 812 S.W.2d 480 (1991), in urging that Gray should be ordered to pay additional child support based on a net-worth approach, because Gray owns seventeen rent houses and a company car. We agree that Stepp's argument has merit only with regard to the depreciation tax deduction.

Gray's sources of income for 1994 were clearly established at the hearings. His two main sources of income were his primary business, Bart Gray Realty, from which he drew a regular salary of $44,650, and his rental properties, with gross receipts of $152,513 and net taxable income of $24,226. This income, as well as income from several other ventures, was clearly reflected on Gray's tax returns, which were entered into evidence and relied upon by the chancellor. Gray's adjusted gross income for 1994 was $127,820. From this sum, the chancellor disallowed a $2,000 deduction for an IRA, which brought his adjusted gross income to $129,820. After properly subtracting federal and state income taxes, FICA, and a deduction for maintaining health insurance on the minor children, which are specifically allowed by the child-support guidelines, *In Re Guidelines for Child Support*, 314 Ark. App. 644, 863 S.W.2d 291 (1993), the amount of Gray's income upon which his child-support obligation was calculated stood at $90,696. Because he owed support for three children, his monthly support obligation pursuant to the child-support guidelines was 32% of this total, or $2,418.56, the amount ultimately ordered by the chancellor.

Stepp presented testimony by her accountant and argued to the chancellor that a depreciation deduction claimed by Gray on his rental properties should be included as income for the purpose of calculating Gray's child-support obligation because it was not an actual expenditure. However, the chancellor based the support award on Gray's adjusted gross income, allowing all of the business deductions claimed by Gray and disallowing only a deduction for an IRA.

For the purposes of calculating child support, the child-support guidelines state that, "Income refers to the definition in the federal income tax laws," less proper deductions for:

1. Federal and state income tax;
2. Social security (FICA) or railroad retirement equivalent;
3. Medical insurance paid for dependent children; and
4. Presently paid support for other dependents by Court order.

The guidelines further provide that:

> For self-employed payors, support shall be calculated based on last year's federal and state income tax returns and the quarterly estimates for the current year. Also the court shall consider the amount the payor is capable of earning or a net-worth approach based on property, life-style, etc.

However, the Internal Revenue Code contains a number of provisions which purport to define income. "Gross income" is defined in 26 U.S.C. § 61 (1994). Section 62 defines "adjusted gross income," while section 63 defines "taxable income."

Section 61 defines gross income as comprising a laundry list of various forms of compensation, including gross income derived from business, gains derived from dealings in property, and income from discharge of indebtedness. Clearly, reference to this definition alone will not suffice to determine a proper amount on which to calculate child support because at least one of the items, income from discharge of indebtedness, does not represent funds actually received, and business income is defined as "gross income derived from business," before deduction of any out-of-pocket business expenses.

We also do not find that section 62, which defines adjusted gross income, provides a sufficient basis for calculating income for the purpose of the support guidelines. This section allows deductions from gross income for, among other items, "trade and business deductions," and "losses from the sale or exchange of property," which could also lead to an inequitable result in calculating a child-support obligation. Finally, taxable income is defined in section 63 as adjusted gross income less certain deductions including personal and itemized deductions. Consequently, we conclude that the chancellor may not simply utilize one of the definitions of "income" found in the tax code, particularly in the case of self-employed persons, to arrive at the true disposable income of the support obligor.

Moreover, Arkansas appellate courts have suggested that a depreciation deduction should properly be considered in awarding child support, in two pre-child-support-guideline cases. In *Hoyt v. Hoyt*, 249 Ark. 266, 459 S.W.2d 65 (1970), the supreme court declined to reduce an award of child support and alimony totaling $1000 per month, which the appellant, a practicing physician, argued was excessive. The court commented that, although the appellant's net income after taxes was about $24,000, "if personal exemptions and *unfunded depreciation* are added to that figure, it appears that Dr. Hoyt had about $32,000 of *spendable income* in that year." *Id.* at 267, 459 S.W.2d at 66 (emphasis added).

In *Pierce v. Pierce*, 268 Ark. 864, 596 S.W.2d 364 (Ark. App. 1980), this court affirmed a denial of a petition for reduction of child-support payments filed by a self-employed payor whose federal tax return showed an income, for tax purposes, of only $2,892.12 for the previous year. The court noted that the appellant admitted that he had a gross income of over $15,000 and had included a deduction for depreciation on business equipment of $4,930.61 on his return. The court stated that "it is clear from this and other evidence in the record that *the tax return alone is not an accurate indicator of his available expendable income* for 1978." *Id.* at 866, 596 S.W.2d at 366 (emphasis added), *c.f., Belue v. Belue*, 38 Ark. App. 81, 85, 828 S.W.2d 855, 857 (1992)(it is appropriate for a chancellor to look beyond the technical definitions of income). Surely, determining the "expendable income" of a child-support payor is still the ultimate task of the chancellor following the adoption of the child-support guidelines in 1989.

Once income is determined, Arkansas Code Annotated section 9-12-312(a)(2) (Repl. 1993) makes reference to the family support chart mandatory when determining the appropriate amount of child support. The statute creates a rebuttable presumption that the amount of child support indicated by the chart is correct, and the presumption shall only be rebutted "upon a written finding or specific finding on the record that the application of the support chart would be unjust or inappropriate, as determined under the established criteria set forth in the family support chart." *Id.* Moreover, in *Roland v. Roland*, 43 Ark. App. 60, 859 S.W.2d 654 (1993), this court stated "[r]eference to the

chart is mandatory, and the chart itself establishes a rebuttable presumption of the appropriate amount which can only be explained away by written findings stating why the chart amount is unjust or inappropriate." We recognize that Gray's income exceeds the amount for which there is a specific entry on the child-support chart and that this necessitated a separate calculation made in accordance with the child-support guidelines, but find that the same imperative applies regarding written findings for deviation from the level of support indicated by the guidelines.

■ By omitting that portion of the depreciation deduction which represents spendable income to Gray without entering a specific finding on the record that it would be unjust or inappropriate to calculate Gray's support based on its inclusion, the chancellor in effect deviated from the child-support chart without making the requisite written findings. We came to a similar conclusion in *Fontenot v. Fontenot*, 49 Ark. App. 106, 898 S.W.2d 55 (1995), a case that involved awarding to a noncustodial parent the right to claim the parties' children as a tax exemption. We held that allowing the noncustodial parent to benefit from the tax deduction was a deviation from the support chart without the requisite findings to support such a deviation. *Id.*

■ Although this court has the power to decide chancery cases de novo on the record, we think it appropriate to remand this case to the chancellor for further consideration of the depreciation deduction issue. *See Jones v. Jones*, 43 Ark. App. 7, 858 S.W.2d 130 (1993). Stepp argues that the entire $34,861 depreciation should be included in Gray's income. However, Gray testified that he acquired his rental properties with 100% financing. His tax returns reflect that he claimed the interest paid on the mortgages as a business deduction, but not the principal. It also appears from the evidence presented concerning Gray's mortgage payments that he would have approximately $20,000 in disposable income remaining from the depreciation deduction even if he is credited with the amount of principal paid on the rental properties. Consequently, we leave it to the discretion of the chancellor to determine whether further evidence is needed to arrive at the amount of the depreciation deduction to be considered as income to Gray.

■ Stepp also claims that the chancellor failed to consider the fact that Gray received a company car. However, this allegation is not supported by the evidence. According to Stepp's own witness, CPA Keith Mabry, personal use of the company car should have been reflected on Gray's W-2, but he could not say it was not included because the W-2 was not "broken down." Moreover, there was no evidence presented by Stepp with regard to the actual monetary value for the use of this car. Therefore, she has failed to bring up a record sufficient to demonstrate error in this regard. *See Jones v. Jones, supra.*

· ■ Also meritless is Stepp's claim that the chancellor failed to consider that Gray received rent from seventeen rent houses. This income was clearly reflected on Gray's tax returns and was a substantial portion of the income upon which his support obligation was calculated.

■ Finally, we do not agree with Stepp's assertion that the court erred in allowing Gray a self-employed health-insurance tax deduction of $793. Gray claimed that health-insurance coverage on his three minor children cost $3540.94 per year, and he was credited with these payments pursuant to the Family Support Guidelines. On appeal, Stepp argues only that Gray's health-insurance policy also covered Gray and another son. Stepp does not argue that excluding the $793 tax deduction from Gray's income in effect allows Gray a double credit for the health-insurance payments; consequently, we cannot say that the chancellor erred by excluding this amount from Gray's income.

As we agree that the chancellor erred by failing to consider the depreciation deduction in calculating Gray's support obligation, we must remand this case to the chancellor for further consideration of the child-support award consistent with this opinion.

## 2. Retroactive Support Award

Stepp also argues that the chancellor erred in denying her request that the child-support increase be made retroactive to December 27, 1994, the date her petition for increase was filed. The increase was instead awarded retroactive to approximately the date of the hearing on the petition in September 1995. She argues

that awarding child support retroactive for only six months was inequitable because she deserved the increase retroactive to the date of the filing of the petition. She relies upon *Pardon v. Pardon*, 30 Ark. App. 91, 722 S.W.2d 379 (1990), as authority for the proposition that requesting support retroactive to the petition date was proper. However, Stepp's argument on this point is without merit.

 A chancellor has discretion to set the amount of child support, and his findings in this area will not be disturbed absent an abuse of discretion. *Creason v. Creason*, 53 Ark. App. 41, 917 S.W.2d 553 (1996). While it is well settled that a chancellor may retroactively modify a child-support obligation up to the date a modification petition is filed, *Grable v. Grable*, 307 Ark. 410, 821 S.W.2d 21 (1991), such an award is not mandatory. Stepp relies on *Pardon, supra*, which quotes with approval 27C C.J.S. *Divorce* § 684 (1986). Section 684 sets forth the range of options available to a chancellor regarding retroactive modification of child support, and provides in pertinent part:

> In an appropriate case, it is within the discretion of the court to make an order for child support retroactive to an earlier date *where it appears that the needs of the child existed as of that date.* However, it has been held that child support payments may not be ordered to commence earlier than the date the divorce action was commenced.
>
> Thus, in various instances it has been held proper for the court to fix the effective date of an order of child support from the date of filing of the petition or complaint, *or from the date of the trial* . . . .

(Emphasis added.)

 There is nothing in the record which suggests that the needs of the children would justify a finding that the chancellor abused his discretion in ordering the increase retroactive for only six months. In fact, although Stepp testified that a private school in which she had enrolled the children was expensive, she nonetheless stated that she did not need the increase in support because of this additional expense, and further stated that she was "perfectly capable" of paying for it. Virtually all of Stepp's evidence consisted of proof that Gray's income had increased substantially since the entry of the previous support order. While this evidence

clearly supports an increase in Gray's child-support obligation, *see* Ark. Code Ann. § 9-14-107 (Supp. 1995), it does not provide an adequate basis for finding that the chancellor abused his discretion in ruling that the increase be made retroactive for only six months.

### 3. *Annual Payment of Support*

Stepp next argues that the chancellor erred in allowing Gray to pay the child support in two parts. Stepp argues that allowing Gray to pay $752 twice a month, with the balance payable at the end of the year when he receives a bonus, violates the intent of the supreme court per curiam order setting forth the support guidelines.

However, we cannot reach this issue because permission to pay part of the support in a lump sum was apparently granted in an order that is not included in the record. Parties seeking relief in this court must bring up a record sufficient to show error. *See Reynolds v. Rogers*, 297 Ark. 506, 763 S.W.2d 660 (1989). Moreover, although Stepp has abstracted comments made by the chancellor from the bench regarding the lump-sum payment, the chancellor's statements fall far short of even constituting a specific ruling on this issue.

### 4. *Attorney's Fees*

Stepp's final argument is that the chancellor erred in denying her request for attorney's fees and expert-witness fees for her accountant. Stepp asserts that the chancellor abused his discretion by increasing her child support, but denying her request for attorney fees. We find her reliance on *Scroggins v. Scroggins*, 302 Ark. 362, 790 S.W.2d 157 (1990), as authority for this argument to be misplaced.

In *Scroggins*, the supreme court deferred to a chancellor's determination of whether to award attorney fees in a divorce case, stating that "the chancellor is in a better position to evaluate the services of counsel than an appellate court." As in *Scroggins*, here, the chancellor asked Stepp's counsel for an itemized billing record, but he awarded no fees; the chancellor in *Scroggins* had awarded less than one-half the amount that the appellant had

requested. However, we do not read *Scroggins* as departing from the well-settled rule that an award of fees in domestic-relations cases is a matter within the sound discretion of the chancellor and not a matter of right. *Ryan v. Baxter*, 253 Ark. 821, 489 S.W.2d 241 (1973).

Reversed in part and remanded, affirmed in part.

ROBBINS, C.J., and AREY, J., agree.