Malika L. GRAY *v.* Winfred T. GRAY

CA 98-483 994 S.W.2d 506

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered July 7, 1999

*Ogles Law Firm, P.A.*, by: *John Ogles*, for appellant.

*Price Law Firm*, by: *Robert J. Price*, for appellees.

M ARGARET MEADS, Judge. This is a second appeal disputing the amount the chancellor set for child support. The parties were divorced in 1991, and appellant was awarded custody of the parties' three children, with appellee paying monthly child support in the amount of $1,075. On December 1, 1994, appellant petitioned for an increase in child support. After a hearing, appellee's child-support obligation was increased to $3,054.46 per month. Appellee filed a motion to reconsider, and after a February 13, 1996, hearing the chancellor reduced child support to $2,418.56 per month. Appellant filed another motion to reconsider, which was deemed denied; she then appealed the issue of child support, among other things, to this court.

In *Stepp v. Gray*, 58 Ark. App. 229, 947 S.W.2d 798 (1997), appellant argued that the chancellor erred in calculating child support because he excluded from appellee's income the full amount of depreciation on rental properties which appellee claimed on his federal income tax return. We agreed and remanded the case to the chancellor for further consideration of the depreciation-deduction issue, stating "we leave it to the discretion of the chancellor to determine whether further evidence is needed to arrive at the amount of the depreciation deduction to be considered as income to Gray." *Id.* at 237.

On remand, the chancellor conducted hearings on September 17, 1997, and October 9, 1997. Relying upon appellee's testimony that twenty percent of his depreciable rental property was in fact appreciating in value, the chancellor found that twenty percent of reported depreciation should be included in computing appellee's income for child support purposes. In addition, the chancellor determined that for the period preceding October 1, 1997, appellee's monthly child-support obligation would be thirty-two percent of his monthly income; thereafter, due to new child support guidelines effective October 1, 1997, appellee's monthly child-support obligation would be twenty-five percent of his monthly income, with the appropriate allowances for medical, dental, tax payments, and two-week support abatement, as well as

a credit against child support for any capital-gains tax. Appellant now argues two points on appeal, contending the chancellor erred (1) in calculating appellee's child-support obligation, and (2) in using the Supreme Court per curiam order of 1997 to set child support and finding that any applicable capital gains tax would be credited against child support. Appellee cross-appeals, contending that none of the depreciation should be includable in his income for purposes of computing child support.

■ ■ Chancery cases are reviewed *de novo* on the record, and the chancellor's findings are not reversed unless they are clearly against the preponderance of the evidence or are clearly erroneous, *Heflin v. Bell*, 52 Ark. App. 201, 916 S.W.2d 769 (1996); the review can be based upon a complete and independent review of the record. *Rockefeller v. Rockefeller*, 335 Ark. 145, 980 S.W.2d 255 (1998). The amount of child support lies within the sound discretion of the chancellor and will not be disturbed on appeal absent a showing of abuse of discretion. *Halter v. Halter*, 60 Ark. App. 189, 959 S.W.2d 761 (1998).

For her first point, appellant argues that all of the depreciation deduction which appellee claimed on his income-tax returns should be added back to his income for purposes of computing child support, and that the chancellor erred in including only twenty percent of the deduction. She further contends that Administrative Order No. 10 provides that child support shall be calculated on last year's federal and state income tax returns, quarterly estimates, and the net worth approach, and "does not mention static, depreciating and appreciating property to determine income." She also points out that the court could not determine from the evidence presented which properties were "staying static," which were depreciating, and which were appreciating.

During the hearings on remand, the chancellor expressed his understanding that *Stepp v. Gray, supra*, required him to review the depreciation deduction which appellee claimed on his tax returns and to determine the amount to be considered as income for child support purposes. However, the chancellor also expressed some confusion as to deducting the principal payments on appellee's rental properties from overall depreciation; this confusion appears

to be based upon the following sentence in *Stepp v. Gray*: "It also appears from the evidence presented concerning [appellee's] mortgage payments that he would have approximately $20,000 in disposable income remaining from the depreciation deduction even if he is credited with the amount of principal paid on the rental properties." *Id.* at 237. The chancellor further stated his understanding that, pursuant to *Stepp v. Gray*, a portion of the depreciation deduction *had to be* added back to appellee's income to arrive at his actual income. Accordingly, the chancellor found that $34,861 in depreciation was an allowable deduction from appellee's income, but that twenty per cent of that figure represented the amount of appellee's rental property that was appreciating in value. Therefore, the chancellor concluded that twenty percent of $34,861 should be added back to appellee's income for the purpose of computing child support.

■ The chancellor based his findings on the unrebutted testimony of appellee and his accountant with regard to the rental properties, the essence of which was that two duplexes and two other properties were appreciating in value and that the others were either static or depreciating in value. From our review of the record, we cannot say that the chancellor's decision to include twenty percent of the depreciation deduction in appellee's income for purposes of determining child support was an abuse of discretion.

■ Under this point, appellant also argues that evidence introduced at a hearing on November 20, 1997,[1] specifically appellee's personal financial statements, reflect that appellee's testimony at the September 17 hearing regarding the value of his rental property was not truthful. The short answer to this argument is that this evidence was not before the chancellor when he announced his ruling on the depreciation issue. The evidence which was before the chancellor when he made his ruling supports his decision to include only twenty percent of the deprecia-

---

[1] A hearing was apparently conducted in this case on November 20, 1997, on appellee's motion to reduce child support. The court's ruling on that motion is not at issue in this appeal.

tion deduction in appellee's income for purposes of child support. *See Wing v. Wing*, 12 Ark. App. 84, 671 S.W.2d 204 (1984).

■■ In his cross-appeal on this point, appellee argues that none of the depreciation deduction should be included in the income figure used to compute his child-support obligation, and he cites several cases from other states in which straight-line depreciation, which he used, was not considered in determining child support. While appellee's argument is well-taken, we are not convinced, nor does appellee argue, that it is necessary to adopt a bright-line rule that support payors who utilize the straight-line method of depreciation will never have depreciation considered as a component when setting child support. Each case must be examined on its own set of facts. In the present case, in determining child support, the chancellor added back to appellee's income the depreciation on those properties that appellee testified were appreciating in value, but not on the properties which appellee testified were staying static or depreciating. Based upon the testimony, we cannot say the chancellor abused his discretion in reaching this decision.

■ In order to eliminate any confusion resulting from *Stepp v. Gray, supra*, we take this opportunity to clarify our court's position on the depreciation-deduction issue. We note that *Administrative Order 10: Arkansas Child Support Guidelines*, 331 Ark. 581, includes the following provision:

> For self-employed payors, support shall be calculated based on last year's federal and state income tax returns and the quarterly estimates for the current year. Also the court shall consider the amount the payor is capable of earning or a net worth approach based on property, life-style, etc.

The guidelines do not mandate that the court include or exclude a payor's depreciation deduction, nor do we make that requirement. Rather, we believe that depreciation is a factor that should be considered, just as property and life-style are considered, on a case-by-case basis.

■■ For her second point, appellant argues that the chancellor erred in using Administrative Order No. 10 to set child support and in finding that any applicable capital gains tax would

be credited against child support. We disagree. In *Heflin v. Bell, supra,* we held that a statute or per curiam order of the Arkansas Supreme Court that is in effect at the time of the hearing on a request for modification of child support is the applicable law pertaining to the modification. *Id.* at 204. At the time of the final hearing in this matter, *Administrative Order 10: Arkansas Child Support Guidelines, supra,* had been adopted, effective October 1, 1997. Therefore, the chancellor was correct in applying Administrative Order No. 10 for the amount of child support to be paid after October 1, 1997, and in applying the previous guidelines (*In re: Guidelines for Child Support,* 314 Ark. 644, 863 S.W.2d (1993)) for child support owed for the period prior to October 1, 1997. The 1993 guidelines provide that when the payor's income exceeds the chart, a payor with three dependents will pay thirty-two percent of his income for child support; Administrative Order No. 10 reduced that percentage to twenty-five percent. The chancellor's application of the proper law was not in error.

 Nor do we find that the chancellor erred in allowing appellee credit for any applicable capital gains tax. For purposes of determining appellee's rental income, both the 1993 Guidelines and Administrative Order No. 10 allow self-employed payors to calculate child support based upon the previous year's federal and state income tax returns, and to allow deductions for state and federal income tax. Tax on capital gains is a component of both federal and state income tax returns, and appellee's 1994 federal tax return indicates that he paid $26,478 in capital gains tax. Moreover, the abstract does not indicate that appellant's counsel objected to proof of the capital gains tax paid by appellee, either at the time it was introduced or when the issue was discussed at the October 9 hearing. As appellee points out, Ark. R. Civ. P. 15(b) allows amendment of the pleadings to conform to the evidence when issues not raised in the pleadings are tried by express or implied consent. With no objection from appellant, the chancellor could properly consider this evidence.

Affirmed.

STROUD, and HART, JJ., agree.

GRIFFEN, ROGERS, and BIRD, JJ., concur.

S AM BIRD, Judge, concurring. I concur in the result reached by the majority because this case is controlled by the law of the case.[1] I believe, however, that this court's earlier decision in *Stepp v. Gray*, 58 Ark. App. 229, 947 S.W.2d 798 (1997), and the majority opinion in the case at bar are incorrect insofar as they instruct the chancellor to consider appellee's depreciation deduction as income for child-support purposes.

Under Section II of *Administrative Order No. 10: Arkansas Child Support Guidelines*, 331 Ark. 581, income is defined as "*any form of payment*, periodic or otherwise, due to an individual, regardless of source, including wages, salaries, commissions, bonuses, worker's compensation, disability, payments pursuant to a disability or retirement program, and interest, less proper deductions for: 1. Federal and state income tax. . . ." (Emphasis added.) In the first place, even applying a most liberal interpretation, I am unable to construe a depreciation deduction to be a "form of payment" within the meaning of the foregoing definition. Secondly, the foregoing definition of income expressly excludes "proper deductions" for federal and state income taxes. If the supreme court had intended for the chancellors to disregard the Internal Revenue Code and determine that legally permissible depreciation deductions under that Code may not be considered in determining the amount of income taxes that can be properly deducted for the purpose of determining income, I believe it would have said so in its administrative order. In my view, the allowance of a depreciation deduction on one's income-tax return merely reduces the taxpayer's income-tax liability, and is not *income* as that term is defined in *Administrative Order No. 10*.

---

[1] The doctrine of the law of the case prevents an issue raised in a prior appeal from being raised in a subsequent appeal. *Vandiver v. Banks*, 331 Ark. 386, 962 S.W.2d 349 (1998). The doctrine provides that a decision of an appellate court establishes the law of the case for the trial upon remand and for the appellate court itself upon subsequent review. *Kemp v. State*, 335 Ark. 139, 983 S.W.2d 383 (1998). On the second appeal, the decision of the first appeal becomes the law of the case, and is conclusive of every question of law or fact decided in the former appeal, and also of those which might have been, but were not, presented. *Griffin v. First Nat'l Bank*, 318 Ark. 848, 888 S.W.2d 306 (1994); *Mercantile First Nat'l Bank v. Lee*, 31 Ark. App. 169, 790 S.W.2d 916 (1990).

As the majority notes, Section III of *Administrative Order No. 10*, dealing with the calculation of support for nonsalaried payors, provides:

> For self-employed payors, support shall be based on last year's federal and state income tax returns and the quarterly estimates for the current year. Also the court shall consider the amount the payor is capable of earning or a net worth approach based on property, life-style, etc.

To me, this section sets forth clearly that in calculating the amount of the child-support obligation of a self-employed person, the court is *required* to determine the amount of the payor's income by referring to the payor's federal and state income-tax returns, (and to consider the amount the payor is capable of earning or use a net-worth approach). Both the federal and state income-tax codes allow taxpayers to exclude (*i.e.*, deduct) from taxable income the amount by which certain property depreciates over its useful life.[2] Also, since quarterly estimates of income taxes are based on a percentage of the taxpayer's income-tax liability for the preceding year, they necessarily reflect the taxpayer's tax liability *after* the deductions allowed by federal and state tax codes.[3] I am unable to interpret Section III to mean that all or part of a taxpayer's depreciation deduction on his tax returns is to be considered as income for purposes of calculating child support.

Depreciation is the presumptive amount of the decline in the value of certain types of property over the passage of time as a result of exhaustion, wear, tear, and obsolescence.[4] Whether the presumed amount of the property's decline in value is valid cannot be determined until the property is sold. When the sale occurs, if the price received for the property is equal to or less than its depreciated value, the taxpayer has received no income from the

---

[2] Under the federal tax code, a depreciation deduction is allowed for "the exhaustion, wear and tear (including a reasonable allowance for obsolescence) . . . of property held for production of income." 26 U.S.C. § 167 (1994). The terms of the Internal Revenue Code regarding depreciation have been adopted by reference in the Arkansas Income Tax Act for the purpose of computing Arkansas income-tax liability. Ark. Code Ann. § 26-51-428 (Repl. 1997).

[3] See generally 26 U.S.C. § 6654(d) (1994).

[4] 26 U.S.C. § 167.

sale. On the other hand, if the sale price exceeds the depreciated value of the property, at that point the taxpayer will have received income, and that amount of income should be considered in calculating any child-support obligation he or she may have at that time.[5] By including the depreciation deduction as income for the purpose of calculating child support, the child-support obligor will be required to pay support on income that may never be received, and the child-support recipient will be receiving the benefit of a profit on the obligor's investment before it can be determined that there will be any profit.

I am not aware of any authority by which an obligation to pay child support in the present is to be calculated based on income that a child-support obligor may realize in the future from investments. Is the child-support recipient going to be required to refund all or part of the money he or she received if it is ultimately determined that the price received for the property when it is sold does not exceed its depreciated value?

I have one other concern with the majority opinion. Although it recognizes that our opinion in *Stepp v. Gray, supra,* caused confusion to the chancellor when he was required, on remand, to consider whether and how much of appellant's depreciation deduction to include in income, the majority opinion in the case at bar provides no guidance that will eliminate that confusion in other cases involving the same issue. Much like the opinion in *Stepp,* the majority in the case at bar simply informs the chancellors that "depreciation is a factor that should be considered, just as property and lifestyle are considered, on a case-by-case basis."[6] The majority provides no hint as to what criteria the chancellor is to consider in making the determination of whether

---

[5] Of course, any "profit" from the sale, for purposes of calculating child support, would have to be reduced by the amount of the income taxes that the federal and state taxing authorities will "recapture" as a result of the sale of residential rental property for a sum that is greater than its depreciated basis. 26 U.S.C. § 1250 (1994); Ark. Code Ann. § 26-51-411 (Repl. 1997).

[6] It should be noted that "property and lifestyle" are specifically mentioned in *Administrative Order No. 10* as factors that may be properly considered in determining the support obligation of self-employed payors on a net worth approach, whereas, there is no mention that consideration should be given to the payor's depreciation deduction.

all or some portion of the depreciation deduction should be considered as income. If only part of the deduction is to be included, there is no guidance offered as to how chancellors should determine what portion to include. I find it ironic that chancellors are mandated by *Administrative Order No. 10* to set child support according to the sums specified in the Family Support Chart, unless a variance from the chart is justified by specific written findings, yet in cases involving a depreciation deduction, the amount of income derived by the chancellor to begin with, from which the presumptive amount of support set forth in the chart is determined, can be fixed by the chancellor without any guidance from the administrative order or the appellate court as to what factors should be considered in determining whether and how much of the depreciation deduction should be deemed income.

I also disagree with parts of Judge Rogers's concurring opinion. In it, Judge Rogers expresses her concern "about depreciation being manipulated by the noncustodial parent," even though there was no suggestion by either of the accountants who testified in this case, nor a contention by the appellant, that appellee had "manipulated" any information on his tax returns to create an inaccurate picture of his income.[7] Obviously, if a child-support payor's income-tax returns were shown to be fraudulent or erroneous, the court could look to the correct information and make the necessary calculations to determine the appropriate amount of child support. But, in the absence of fraud or error in the tax returns or quarterly estimates, it seems to me that the amount of child support to be paid by the self-employed should be calculated based on the income shown on tax returns and quarterly estimates, as required by *Administrative Order No. 10*.

I am also puzzled by Judge Rogers's suggestion in her concurring opinion that one's child-support obligation can be reduced in instances of real-estate transactions where one has no investment in the property but can receive cash flow. If this is a

---

[7] According to appellant, he was utilizing a "straight-line" depreciation schedule, approved by Internal Revenue Code (26 U.S.C. 167), over a period of "twenty-seven and a half or twenty-eight and a half years." Under 26 U.S.C. § 168(d) (1994), the minimum term of depreciation for "section 1250 property" (residential rental property) is 27.5 years.

suggestion that the depreciation deduction should be included as income in calculating child support where the asset was purchased with borrowed money, but should not be included as income where the obligor has fully paid for an investment asset with his or her own money, I see no validity to that distinction. Appellee is obligated to pay these debts whether or not he ever makes any money on his investment. Furthermore, there is no suggestion by the evidence in this case that appellee had no investment in the property or was receiving the benefit of a significant positive cash flow. To the contrary, although we can not tell from the abstract the total amount appellee paid for the rental properties that are the subject of his depreciation deduction, we can tell that as of December 31, 1994, he owed a balance of $605,000 on promissory notes that were secured by real-estate mortgages on his rental property, and that in 1994, alone, he reduced that indebtedness by more than $32,000 while realizing rental income of only $15,731. Under these circumstances, I cannot agree that appellee has no investment in the property, or that he benefitted from a significant cash flow. In fact, these figures would indicate that, for 1994, a negative cash flow resulted.

As I stated at the outset, unfortunately this case must be affirmed because of the requirement that we apply the doctrine of the law of the case. However, I hope that when future cases are considered that involve the issue of whether a depreciation deduction should be treated as income for purposes of calculating child support, our mistake will be corrected. I commend and join with the majority judges in their concern that the children of our state be appropriately and adequately supported by their noncustodial parents. However, I am also concerned that the effect of this court's decisions in the *Stepp* case and the case at bar is to assess child support against income that has not yet been realized, and, therefore, to impose an inequitable assessment of child support against the investor, as compared to the noncustodial parent who chooses not to invest.

GRIFFEN, J., joins in this concurring opinion.

JUDITH ROGERS, Judge, concurring. I concur because I believe that the law of the case is determinative of our deci-

sion. I do agree that depreciation is a factor to be considered in computing income for child-support purposes. I write separately to note my concerns about depreciation being manipulated by the noncustodial parent, and to emphasize that there are many problems involved in employing reasonable and appropriate depreciation.

The reduction of income by depreciation is often inappropriate when considering child support, as this reduces the amount paid for child support without regard to cash income available to the payor from rental or income-producing property. Essentially, it is an issue of the appropriate income to be used in determining the obligation of child support. The Arkansas statute tracks the Internal Revenue Code for purposes of taxable income. However, in real estate transactions a person can have no investment in the property and can receive significant cash flow, which is usually the determining factor from a financial viewpoint in the property value and income.

In the instant case, it would not be proper to deduct the total amount of depreciation from appellee's income because the depreciation relates to a long-term reserve for replacement that may take thirty years, which is well beyond the minority of the child. Some consideration should be given for reasonable depreciation to the extent that it reflects mortgage amortization or financing under the circumstances. In addition, it should be noted that appellee does not have any cash investment of his own in the real estate and therefore, even though for tax purposes he is entitled to a deduction for depreciation, he has no real out-of-pocket expenses in that regard. Therefore, there are funds available to appellee that should be utilized in the calculation of his child-support obligation.

I also want to reiterate that the support guidelines are just that — guidelines — and that flexibility is delegated to the trial judge who, in utilizing his or her considerable discretion in these cases, can and should consider the economic impact and funds actually available to the payor.