Phil WHITE *v.* Alice Ann WHITE

CA 05-1029

236 S.W.3d 540

Court of Appeals of Arkansas
Opinion delivered May 24, 2006

*Smith, Maurras, Cohen, Redd, & Horan, PLC,* by: *Matthew Horan,* for appellant.

*Kelly A. Procter-Pierce,* for appellee.

OLLY NEAL, Judge. This appeal involves the calculation of child support for an "S" corporation shareholder and whether the trial court can add back to the shareholder's income expenses incurred by the business and deducted that same year instead of being depreciated over several years. On cross-appeal, issues are raised concerning whether the shareholder would have to share in the expenses of his daughter's extracurricular activities, whether the shareholder could claim the tax deduction for the daughter, whether he could satisfy part of a judgment for child support by purchasing a car for the daughter, and whether he owed any money for obligations imposed by the original divorce decree. We vacate and remand in part and reverse and remand in part on direct appeal. On cross-appeal, we vacate and remand in part, dismiss in part, and affirm in part.

Appellant Phillip White and appellee Alice White were divorced in 1998. In the decree, Phillip was awarded custody of the parties' now-adult son and Alice was awarded custody of the parties' daughter. Phillip was ordered to pay child support of $400 per month. As part of the property division, Phillip agreed to pay

Alice $8,500 as her share of the equity in the parties' marital residence. This payment was to be made to the closing company when Alice purchased a home for herself and her daughter. The decree also provided that, if Phillip sold the marital residence within one year from entry of the decree, Alice would be entitled to half of the sales price, less the real-estate commission, the equity payment, and the current mortgage payments and all payments made by Phillip.

On May 17, 2004, Alice filed a petition seeking to modify the divorce decree to increase Phillip's child-support obligation. The petition alleged that Phillip's income had substantially increased since the entry of the decree. The petition also sought to hold Phillip in contempt for failing to make the $8,500 payment to the closing company. Alice sought judgment for the $8,500. Alice also sought judgment for her half of the proceeds from the sale of the marital residence. Phillip denied the allegations of the petition. In addition, he affirmatively alleged that he had paid the daughter's annual tuition at a private school, paid the daughter's extracurricular expenses, and paid closing costs for Alice, as well as other monies totaling over $8,500. Phillip further alleged that Alice was not due any funds from the sale of the residence because the amounts that he was entitled to deduct exceeded the amount of the proceeds.

David Potts, a certified public accountant, testified as Alice's expert. He stated that he examined Phillip's individual tax returns for the years 2002, 2003, and 2004, as well as the tax returns for Phillip's businesses for those same years. He stated that one of the businesses, General Pallets, purchased, among other items, a 2000 Peterbilt tractor in 2004 for $45,000 and, as authorized by section 179 of the tax code, deducted the entire cost that same year. Phillip owned eighty-one percent of the shares of General Pallets. Potts stated that General Pallets was an "S" corporation and that the income from it and the other business "passed through" to Phillip. He calculated Phillip's income for 2004 as $150,804, prior to any adjustment for the section 179 expense. He decided to arbitrarily charge back to Phillip's income ninety percent of the depreciation expense. He stated that the average for Phillip's income in 2002 and 2003 was $218,869, resulting in a child-support obligation of $2,736 per month. The average for Phillip's income in 2003 and 2004 was $224,139, resulting in a child-support obligation of $2,802 per month. Potts stated that he included a capital gain of $98,766 in Phillip's income for 2003. He also stated that the total

depreciation expenses added back into Phillip's income were $19,283 in 2003 and $46,121 in 2004.

Alice testified that the parties' daughter, Lindsey, was a talented barrel racer and qualified for the Youth World competition the last two years but did not get to participate because she could not afford the expenses, including the entry fees, the cost of transportation for the horse, feed for the horse, gasoline, and expenses for herself and her daughter. She described Lindsey's activities as a means to obtain a scholarship to Oklahoma State University and further her career goal of becoming a veterinarian. Alice asserted that Phillip should be ordered to pay for half of the cost of these activities, adding that she could afford the expenses for activities within a twenty-mile radius but needed financial assistance for other more distant competitions such as those held in Oklahoma, Mississippi, or Tennessee.

Alice testified that she closed on the purchase of a home on September 16, 1999. She stated that, at the time of closing, Phillip paid $5,688.90 and that she was asking for judgment for the difference. Although the closing statement showed a deposit or earnest money of $500, she did not know if Phillip paid that. She also did not recall whether Phillip paid $548 to a bank on October 28, 1999, and added that Phillip has never given her any extra money. She stated that, if Phillip ever made payments on her behalf, he always took it out of other payments he owed. Alice did not agree that Phillip had made significant payments other than the child support on Lindsey's behalf. She also stated that, during the pendency of the divorce, she lost her home, her car, and almost lost her life.

On cross-examination, Alice stated that she was not currently employed and last worked in May 2002. She stated that she was diagnosed and treated for breast cancer and was drawing disability of $925 per month. She stated that she did not claim Lindsey as a deduction on her tax returns. According to Alice, she and Lindsey lived with her sister and her family and she paid her sister to help with the utilities.

Phillip testified that his source of income was the pallet company and other investments. He identified financial statements from the years 2002, 2003, and 2005 but claimed that they did not reflect his personal financial situation because twenty-five to thirty percent belonged to his wife. He stated that the January 2005 statement listed his salary from the pallet company as $253,000 and

rental income of $296,666, which were the figures reflected on his tax return. According to Phillip, the capital gain resulted from the restructuring of the ownership of a building that burned. He said that he retained ownership of the land on which the building had been situated and that his business partner kept the insurance proceeds.

Phillip described Alice as being irresponsible with money. He acknowledged that, although the divorce decree required him to pay $8,500 on Alice's behalf at the time she closed on a house, he only paid approximately $5,600 because that was the only amount that Alice was required to pay at closing. According to Phillip, he also purchased a washer and dryer and some other items for Alice and identified copies of checks for those purchases. Phillip also stated that he purchased a car for Alice for $4,500 but did not have documentation from the sale. He said that the extra payments, including the car, totaled $5,250.

Phillip also asked the court to allow him to claim Lindsey as a tax deduction until she turned eighteen. Alice objected, stating that she had never been placed on notice of this request. Phillip also proposed that he be allowed to buy Lindsey a vehicle and to deduct that cost from the child support, together with an allowance of $200 per month. He stated that he heard David Potts's testimony that child support should be $2,800 per month but stated that he drew a salary of only $3,200 per month. He said that such a payment would cause a real problem with his cash flow. Phillip did not believe that Lindsey needed $2,800 per month but did not dispute that there were times that he gave Alice money and deducted it from child support.

Michael Moser, Phillip's CPA, testified that he reviewed the same financial information that David Potts had used and also listened to Potts's testimony. He calculated Phillip's average income for 2003 and 2004 at $133,842, which would yield a child-support obligation of $1,673 per month. He stated that one of the differences between Potts's calculations and his own is that he did not include the $98,766 capital gain in Phillip's income. He said that adding ninety percent of the section 179 expense "would probably be a proper calculation to make." He said that the business used straight-line depreciation over the life of the asset. Moser stated that he disagreed with Potts's calculation adding back the current section 179 expense. He denied that Phillip was trying

to manipulate the book tax difference by using the section 179 expense. He said that, because of the section 179 expense, Phillip's taxes were much lower in 2004.

In its order, the trial court found that Phillip was entitled to deduct ten percent of the cost of the equipment for depreciation purposes. The trial court also added back to Phillip's income the sum of $98,766 from a capital gain. The court rejected Phillip's argument that he should not have to pay support on this amount because he received the payment in the form of land, not money. The court also declined Phillip's request to deviate from the fifteen-percent amount required by the child-support guidelines, finding that other similar, high-income cases had not deviated from the guideline amount. The trial court calculated Phillip's child-support obligation at $2,847 per month, beginning January 1, 2005. This was based on a finding that Phillip's average income for 2003 and 2004 was $227,772 and applying the fifteen-percent figure provided by the guidelines. Phillip was also ordered to pay child support of $2,761 for the period of May 17, 2004 (the date Alice filed her petition), through December 31, 2004, based on a finding that Phillip's average income for 2002 and 2003 was $220,912. Alice was awarded a net judgment for the amount of the increased child support in the sum of $26,770, to be paid within ninety days. Phillip was to be given credit for half of this sum, or $13,385, if he purchased an automobile for the child within ninety days. The trial court allowed Phillip to claim the tax deduction for the parties' daughter, finding that the benefit to Phillip substantially outweighed the benefit to Alice. The court also found that Phillip had complied with the divorce decree by paying $5,668.90 in closing costs that, together with other sums paid, exceeded the sum of $8,500. Finally, the trial court declined to order Phillip to pay any of the daughter's extracurricular horse-show expenses. This appeal and cross-appeal timely followed.

Child-support cases are reviewed de novo on the record. *Paschal v. Paschal*, 82 Ark. App. 455, 117 S.W.3d 650 (2003). It is the ultimate task of the trial judge to determine the expendable income of a child-support payor. *Cole v. Cole*, 82 Ark. App. 47, 110 S.W.3d 310 (2003). This income may differ from income for tax purposes. *See Brown v. Brown*, 76 Ark. App. 494, 68 S.W.3d 316 (2002). As a rule, when the amount of child support is at issue, the appellate court will not reverse the trial judge absent an abuse of discretion. *McWhorter v. McWhorter*, 346 Ark. 475, 58 S.W.3d 840 (2001); *Paschal, supra.*

Phillip raises one point on appeal in which he argues that the trial court erred in adding the capital gains and the entire depreciation expense back to his income. On cross-appeal, Alice argues five points: that the trial court erred in allowing Phillip credit for half of the child-support judgment for his purchase of a vehicle for the parties' daughter; that the trial court erred in allowing Phillip to claim the tax deduction for the parties' daughter; that the trial court erred in not requiring Phillip to pay any expenses for the daughter's horse-show activities; that the trial court erred in not finding that Phillip owed Alice money for the sale of the home; and that the trial court erred in not adding all of the depreciation deduction to Phillip's income.

Phillip's point on appeal is that the trial court erred in adding all of the depreciation expense and in adding the capital gain back into his income and calculating his child-support obligation based on that income. Alice's fifth point on cross-appeal also involves the depreciation issue and will be considered here.

█ It is proper for a trial court to consider whether a depreciation deduction should be allowed in calculating expendable income. *See Stepp v. Gray,* 58 Ark. App. 229, 947 S.W.2d 798 (1997) (*Gray I*) (discussing appellate cases where a depreciation deduction was properly added back in to the support payor's income in arriving at an accurate indicator of expendable income). However, the guidelines *do not* mandate that the court include or exclude a payor's depreciation deduction, nor did this court make that requirement. *Gray v. Gray,* 67 Ark. App. 202, 994 S.W.2d 506 (1999) (*Gray II*). Depreciation is a factor that should be considered, just as property and lifestyle are considered, on a case-by-case basis. *Id.* In its written order, the trial court appears to state that it agrees with Alice's expert that Phillip's income should be calculated by adding back an arbitrary ninety percent of the depreciation expense. However, the trial court's calculations added the entire depreciation expense back to Phillip's income. Because of the apparent inconsistency between the trial court's statements and its calculations, we vacate the child-support award and remand this issue back to the trial court for clarification of its findings and calculations regarding the depreciation expense.

Phillip also argues that the trial court erred in including a capital gain of $98,766 in his income because it was not "income" and he did not "receive" such a payment. The guidelines broadly define gross income, for purposes of child support, as including any

form of payment "regardless of source." Administrative Order Number 10, section II. The guidelines further provide that income includes, but is not limited to, "wages, salaries, commissions, bonuses, workers' compensation, disability, payments pension or retirement program, and interest. . . ." *Id.* It is well established that the definition of income under the guidelines is broadly construed. *McWhorter, supra; Davis v. Office of Child Support Enforcement,* 341 Ark. 349, 20 S.W.3d 273 (2000).

■ A "gain" may occur as a result of an exchange of property, payment of a taxpayer's indebtedness, relief from a liability, or other profit realized from completion of the transaction, and the fact that the gain is a portion of the value of property received by the taxpayer does not negate its realization. *See Helvering v. Brunn,* 309 U.S. 461 (1940). A gain from the sale or exchange of property, when realized, constitutes "profit" and is regarded as "income" that is taxable during such period when it is realized. *See MacLaughlin v. Alliance Ins. Co.,* 286 U.S. 244 (1932). In *Cottage Savings Association v. Commissioner,* 499 U.S. 554, 559 (1991), the Supreme Court provided as follows:

> Rather than assessing tax liability on the basis of annual fluctuations in the value of a taxpayer's property, the Internal Revenue Code defers the tax consequences of a gain or loss in property value until the taxpayer "realizes" the gain or loss. The realization requirement is implicit in 1001(a) of the Code, 26 U.S.C. 1001(a), which defines "[t]he gain [or loss] from the sale or other disposition of property" as the difference between "the amount realized" from the sale or disposition of the property and its "adjusted basis." As this Court has recognized, the concept of realization is "founded on administrative convenience." *Helvering v. Horst,* 311 U.S. 112, 116 (1940). Under an appreciation-based system of taxation, taxpayers and the Commissioner would have to undertake the "cumbersome, abrasive, and unpredictable administrative task" of valuing assets on an annual basis to determine whether the assets had appreciated or depreciated in value. *See* 1 B. Bittker & L. Lokken, Federal Taxation of Income, Estates and Gifts ¶ 5.2, p. 5-16 (2d ed. 1989). In contrast, "[a] change in the form or extent of an investment is easily detected by a taxpayer or an administrative officer." R. Magill, Taxable Income 79 (rev. ed. 1945).
>
> Section 1001(a)'s language provides a straightforward test for realization: to realize a gain or loss in the value of property, the taxpayer must engage in a "sale or other disposition of [the]

property." The parties agree that the exchange of participation interests in this case cannot be characterized as a "sale" under 1001(a); the issue before us is whether the transaction constitutes a "disposition of property."

In the present case, Phillip has not sold or otherwise disposed of any property. Therefore, he has not realized a gain. It is this lack of sale or disposition that distinguishes this case from *Ford v. Ford*, 347 Ark. 485, 65 S.W.3d 432 (2002), where our supreme court held that one-time income such as an inheritance and the cashing in of a certificate of deposit was "income" within the meaning of the guidelines. Under the facts of this case, we hold that the trial court abused its discretion by including the capital gain in Phillip's income for child-support purposes. We therefore reverse and remand for proper calculation of Phillip's child-support obligation.

■ In her first point on cross-appeal, Alice argues that the trial court erred in allowing Phillip to receive credit of $13,385 towards the child-support judgment if he purchased the parties' daughter a vehicle within ninety days of entry of the order. We do not address this point because it is not properly before the court due to the conditional nature of the credit. *See Corbit v. State*, 334 Ark. 592, 976 S.W.2d 927 (1998) (holding that a conditional judgment, order, or decree, the finality of which depends upon certain contingencies which may or may not occur, is not final for the purposes of appeal); *Mid-State Homes, Inc. v. Beverly*, 20 Ark. App. 213, 727 S.W.2d 142 (1987) (holding that a decree that grants alternative relief at the election of one of the parties is not appealable). Moreover, we cannot find any evidence in the record that Phillip, in fact, purchased a vehicle for his daughter thereby entitling him to the credit. Therefore, any opinion on this issue would be advisory. It is often said we do not render advisory opinions. *Benton v. Bradley*, 344 Ark. 24, 37 S.W.3d 640 (2001); *McCuen v. McGee*, 315 Ark. 561, 868 S.W.2d 503 (1994). We dismiss this part of Alice's cross-appeal.

■ Alice next argues that the trial court erred in allowing Phillip to claim the tax deduction for the parties' daughter. Her argument is that she objected to this issue being tried because Phillip did not raise the issue in his pleadings and that the trial court did not make the requisite findings to support the deviation from

the guidelines. We hold that this issue was properly tried with Alice's implied consent due to her having been the first party to broach the subject.

In her testimony, Alice stated that she did not claim her daughter on her tax returns. Later, during his testimony, Phillip asked that he be allowed to claim the parties' daughter as a tax deduction. Alice objected, stating that she was not on notice that this would be an issue. The trial court awarded the deduction to Phillip, finding that the benefit to Phillip substantially outweighed the benefit to Alice. Permitting the introduction of proof on an issue not raised in the pleadings constitutes an implied consent to trial on that issue. *Ison Props., LLC v. Wood*, 85 Ark. App. 443, 156 S.W.3d 742 (2004). We now turn to the merits of Alice's argument.

In *Dumas v. Tucker*, 82 Ark. App. 173, 119 S.W.3d 516 (2003), this court held that an award of a tax exemption to a non-custodial parent results in a deviation from the family-support chart and that the trial court erred in making such an award without providing the findings required by Ark. Code Ann. § 9-12-312(a)(2) (Repl. 2002) and without weighing the benefits to the parties as required by Administrative Order Number 10, section III(f). *See also Fontenot v. Fontenot*, 49 Ark. App. 106, 898 S.W.2d 55 (1995). Here, the trial court performed the required weighing and made the required findings when it stated that the benefit to Phillip substantially outweighed the benefit to Alice. Alice argues that the trial court should have made more specific findings as to why the benefit to Phillip substantially outweighed the benefit to her. A party is not entitled to a direct answer on every specific requested finding if the trial court's findings adequately address the issues. *See Lawson v. Sipple*, 319 Ark. 543, 893 S.W.2d 757 (1995). It does not appear from the abstract that Alice ever requested that the court make such specific findings on why the benefit to Phillip outweighed the benefit to her. By not making such a motion, she waived her right to object to the specificity of the findings that were made. *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550 (Fed. Cir. 1995); *Reliance Fin. Corp. v. Miller*, 557 F.2d 674 (9th Cir. 1977); *see also* David Newbern and John Watkins, *Arkansas Civil Practice and Procedure* § 32:8 (4th ed. 2006). We affirm on this point.

For her third point, Alice argues that the trial court erred in not requiring Phillip to pay any expenses for the daugh-

ter's horse-show activities. The trial court refused to award these expenses based on the increase in child support. We find no error.

Section V of the guidelines includes "recreation" as a factor for the trial court to consider in deciding whether to deviate from the presumptive amount obtained from application of the chart. However, we cannot say that the trial court abused its discretion in the present case by refusing to order Phillip to contribute to the child's horse-show expenses. First, Alice did not produce any evidence as to how much she was seeking from Phillip for these activities. Alice, as the party seeking an upward deviation from the presumptive amount of child support, had the burden of presenting evidence sufficient to warrant the deviation. *See Munn v. Munn*, 315 Ark. 494, 868 S.W.2d 478 (1994). Second, she is receiving a substantial judgment ($26,770) for the increased child support back to the date she filed her petition for modification. We affirm on this point.

■ Alice's fourth point is that the trial court erred in not finding that Phillip owed Alice money for the sale of the home. Alice argues that it was error for the trial court not to award her judgment for the difference between the $8,500 Phillip was ordered to pay and the $5,668.90 he actually paid. Phillip testified that, in addition to the closing costs, he made other payments on Alice's behalf that totaled in excess of the $8,500 required by the decree. Alice disputed that Phillip ever gave her any extra money or made payments on her behalf. Given that the findings of disputed facts and the determination of the credibility of witnesses are within the province of the trial judge who has the opportunity to observe the witnesses during trial, *Thompson v. Thompson*, 63 Ark. App. 89, 974 S.W.2d 494 (1998), we cannot say that the trial court erred in finding that Phillip did not owe Alice money under the decree. We affirm on this point.

Vacated and remanded in part; reversed and remanded in part on direct appeal.

Vacated and remanded in part; dismissed in part; affirmed in part on cross-appeal.

GLADWIN and GRIFFEN, JJ., agree.