James B. SNOW, Appellant,

v.

Kimberly R. SNOW, Appellee.

No. 1999–CA–000174–MR.

Court of Appeals of Kentucky.

July 14, 2000.

Harry L. Mathison, King, Deep and Branaman, Henderson, for appellant.

William F. Polk, Jr., Polk & Polk, Henderson, for appellee.

BEFORE: HUDDLESTON, JOHNSON, and KNOPF, Judges.

## OPINION

KNOPF, Judge:

James Brian Snow (Brian) and Kimberly Snow (now Kimberly Cantley) were divorced by decree entered June 20, 1995. The parties were awarded joint custody of their infant son with Kimberly designated to provide the child's primary residence and with Brian ordered to pay child support in the amount of $186.00 per week. Brian appeals from a December 23, 1998, order of the Henderson Circuit Court increasing his child support obligation to $233.60 per week. Brian maintains that the modified support order is based on an inaccurate determination of his income. For the following reasons, we disagree and affirm the order of the trial court.

Brian is the sole officer and sole shareholder of a logging and timber harvesting business, Brian Snow Logging, Inc. His initial support obligation, calculated in April 1995, was based on a monthly income from that business of $4,300.00. His 1995 income-tax return apparently showed a total income of approximately $53,000.00.

In September 1997, alleging that his income had been reduced by nearly half, Brian moved to have his support obligation decreased. Kimberly countered with a motion to have Brian's obligation increased. The matter was tried before a domestic relations commissioner in January 1998. Brian testified that the logging company had lost money in both 1996 and 1997, and he claimed that throughout 1997 his only compensation from the business had been his salary of $500.00 per week. He introduced tax returns prepared by his accountant showing the 1996 business deficit and a 1997 year-end balance sheet and income statement prepared by the logging company showing a deficit of more than

$112,000.00 based on revenues of about $734,000.00. The income statement listed an "officer's salary" item of $25,500.00.

During her cross examination of Brian, Kimberly introduced balance and income statements for the logging business from the end of July 1997 and the end of August 1997. The July statements had been prepared by an independent accountant and were accompanied by a disclaimer to the effect that Brian had not supplied sufficiently detailed information to permit a full analysis. The August 1997 statements, like the year-end statements Brian introduced, had been prepared by the logging company itself. Both of these statements reflect year-to-date profits from timber sales. The July statements show net income of nearly $72,000.00, based on revenues of nearly $645,000.00, and a total equity of approximately $166,000.00. The August statements show net income of nearly $28,000.00, based on revenues of about $672,000.00, and a negative total equity of almost $10,000.00. The income differences among the three reports are largely due to the fact that revenues after July were minimal, whereas labor and other costs continued at previous levels. The equity differences are largely attributable to the inclusion in the August and year-end statements of a much larger accumulated depreciation allowance than was included in the July statement. Unlike the year-end statements Brian introduced, both the July and August statements report an "officer's salary" item of $34,000.00.

The decline in the logging company's revenues during the latter portion of 1997 was shown to have been deliberate. Brian testified that he was in the process of organizing a new business, a saw mill, to be known as Snow Enterprises, LLC. He had borrowed approximately a million dollars to equip the mill, he said, and had been stockpiling the logging company's timber in anticipation of the mill's becoming operational. Indeed, the 1997 year-end balance sheet reflected timber inventory of more than $300,000.00, whereas the

August 1997 balance sheet showed timber inventory of $100,000.00. Although the mill and the logging company are technically distinct, the logging company bore some of the mill's start-up expenses, and, as noted, the logging company's sales had essentially been suspended until the mill could serve as its buyer. No financial statements of Snow Enterprises, LLC, were introduced. Kimberly did introduce, however, one of Brian's credit applications for the mill project, from September 1997, on which Brian listed personal assets in excess of $300,000.00 including equity in the logging company of $175,000.00.

When confronted with the apparent discrepancy between the $34,000.00 officer's salary listed on the July and August statements and his claim of having been paid only $500.00 per week, Brian explained that the officer's salary figure on the earlier reports mistakenly included the salary paid to his new wife, who was helping him with the business, as well as the salary paid to himself. He insisted that he had received no more than $26,000.00 for all of 1997 and that the logging company had operated at a loss. The reduction in his income entitled him, he claimed, to have his child-support obligation reduced.

Kimberly claimed, and the commissioner agreed, that the logging company's earning potential was more accurately reflected by the July and August 1997 statements than by the year-end statement Brian submitted. She noted that the company's equity, as reflected in the July balance statement and on Brian's September credit application, had increased significantly since the divorce and also that Brian had been able to afford the expensive hobby or side business of competing in rodeos. He had purchased horses and riding equipment, she pointed out, worth more than his then current annual support obligation.

The commissioner recommended that Brian's income be calculated based on the August 1997 statements as follows: $27,928.33 net business income per 8

months plus $34,000.00 salary per 8 months equals $61,928.33 total income per 8 months; $61,928.33 per 8 months yields an average (approximately) of $7,741.00 per month. The trial court adopted the commissioner's recommendation and based thereon found Brian's child support obligation to be $233.60 per week. Brian does not dispute the trial court's application of the child-support guidelines to this monthly income. He maintains, however, that, in determining that income, the commissioner and the trial court miscalculated the logging company's income and unfairly disregarded his testimony concerning the salary paid to his wife.

Child-support awards may be modified only as to installments accruing after notice of the motion for modification and then "only upon a showing of a material change in circumstances that is substantial and continuing." KRS 403.213(1). As with the original determination of a child support award, the decision whether to modify an award in light of changed circumstances is within the sound discretion of the trial court. *Price v. Price*, Ky., 912 S.W.2d 44 (1995); *Rainwater v. Williams*, Ky.App., 930 S.W.2d 405 (1996). Under KRS 403.213(2), a change in circumstances is rebuttably presumed to be substantial if application of the child-support guidelines (KRS 403.212) to the new circumstances would result in a change in the amount of child support of 15% or more. Given this standard, there is no dispute that, as determined by the trial court, the change in Brian's income was substantial.

The issue is whether the trial court properly determined Brian's income, a determination controlled by KRS 403.212(2)(c), which provides in pertinent part as follows:

> For income from self-employment, rent, royalties, proprietorship of a business, or joint ownership of a partnership or closely held corporation, "gross income" means gross receipts minus ordinary and necessary expenses required for self-employment or business operation. Straight-line depreciation, using Internal Revenue Service (IRS) guidelines, shall be the only allowable method of calculating depreciation expense in determining gross income. Specifically excluded from ordinary and necessary expenses for purposes of this guideline shall be investment tax credits or any other business expenses inappropriate for determining gross income for purposes of calculating child support. Income and expenses from self-employment or operation of a business shall be carefully reviewed to determine an appropriate level of gross income available to the parent to satisfy a child support obligation. In most cases, this amount will differ from a determination of business income for tax purposes....

This statute confronts trial courts with the unenviable task of distinguishing between a self-employed child-support obligor's taxable income and what may be called his or her disposable income. *In re Marriage of Gaer*, 476 N.W.2d 324 (Iowa 1991). Taxable income commonly serves as the starting point for determining "gross income" for child support purposes, and because taxable income frequently provides a good measure of the income left to a business after the deduction of ordinary and necessary expenses, deviation from it should not be undertaken lightly. *Ogard v. Ogard*, 808 P.2d 815 (Alaska 1991); *In re Marriage of Starcevic*, 522 N.W.2d 855 (Iowa App.1994). Nevertheless, as the statute recognizes, taxation and child support serve different purposes. Trial courts establishing child support thus have the discretion and the duty to scrutinize taxable income and to deviate from it whenever it seems to have been manipulated for the sake of avoiding or minimizing a child support obligation or when deviating from it is clearly in the best interest of the child. *Rainwater, supra; Downey v. Rogers*, Ky.App., 847

S.W.2d 63 (1993).[1]

▆▆▆ Along with the trial court's duty to scrutinize taxable income, of particular concern in this case is the requirement, noted above, that modifications of child support be based upon a substantial and *continuing* change in circumstances. Where, as here, the alleged change in circumstances is a change in the support obligor's income,

> [t]he requirement that the [change] in income must be "continuing" means that the trial court must base an increase [or decrease] in child support only on the payor's current income. It may not increase a child-support award to compensate for the payor's higher income in past years if the payor's current income is substantially lower. Nevertheless, the court need not restrict its view of the evidence to a few isolated months after the filing of the modification petition in order to determine a party's current income, particularly when such income is controlled by the party himself and is subject to possible manipulation upon the filing of the modification petition.... Rather, a court reasonably may consider evidence of income prior to the modification petition to assist in determining the individual's current income and whether it has "substantially" changed since the existing child support award was set.... Evidence regarding current or reasonably-projected income and also of recent years' past income likewise may assist the court in determining whether an increase in income is "continuing." ... Indeed, if the court finds that "earnings are reduced as a matter of choice and not for reasonable cause, the court may attribute income to a parent up to his or her earning capacity." ... Certainly, evidence of prior years' earnings is relevant to determining "earning capacity."

*Pearson v. Pearson,* 190 Ariz. 231, 946 P.2d 1291, 1296 (1997) (citations omitted).

The trial court concluded that the final months of 1997, during which the logging company's income was virtually suspended as Brian made the transition from timber production to lumber production, did not present circumstances likely to be continuing and thus that they should not bear on the determination of Brian's income. Brian himself estimated that the mill would eventually generate net income in the neighborhood of $200,000.00 per year, and the indication was that the logging company, too, would resume sales once the mill became a customer. In these circumstances, we cannot say that the trial court abused its discretion by basing its "gross income" determination on something other than Brian's 1997 taxable income. Brian's substantial deferral of business income at the end of 1997, which led directly to his year-end losses, cannot be a lasting circumstance, and thus it does not provide a proper basis for reducing Brian's child-support obligation.

Furthermore, the court's determination that Brian's income had increased as of the end of August 1997, when the transition to the mill began, is substantiated by the July and August financial statements, by Brian's rodeo participation, and by the logging company's success, a success reflected in the company's increased equity (despite the claimed loss in 1996) and in the significant expansion of the enterprise to include the milling operation. While it is true that the new venture has yet to prove itself, the presumption is that Brian's assets will continue to generate at least the income of which they have been shown to be capable. *Keplinger v. Keplinger,* Ky.App., 839 S.W.2d 566 (1992). If this proves not to be the case, if the mill struggles, then Brian may again ask the court to reconsider his support obligation.

---

1. See also *Gray v. Gray,* 67 Ark.App. 202, 994 S.W.2d 506 (Ark.App.1999); *Klockow v. Klockow,* 979 S.W.2d 482 (Mo.App.1998); *Major v. Major,* 124 N.M. 436, 952 P.2d 37 (1997); *Roberts v. Wright,* 117 N.M. 294, 871 P.2d 390 (1994); *Merrill v. Merrill,* 587 N.E.2d 188 (Ind.App.1992); *R.T. v. R.T.,* Del. Supr., 494 A.2d 150 (1985).

Any such request, however, should be based on a full disclosure of financial records.

Brian also raises more specific objections to the trial court's order, but they are not well founded. He complains that the trial court erred by attributing to him a $34,000.00 salary through the end of August 1997. The record includes substantial evidence in support of that finding—the logging company's own August 31 income statement—and therefore the finding is not to be disturbed on appeal absent some other indication that it was clearly erroneous. CR 52.01; *Spurlin v. Spurlin,* Ky., 456 S.W.2d 683 (1970); *Rife v. Fleming,* Ky., 339 S.W.2d 650 (1960). Brian claims that he was paid only $500.00 per week and that the $34,000.00 entry on the income statement mistakenly includes payments to his wife, but his testimony to that effect was not so compelling as to render the trial court's finding clearly erroneous. In particular, although Brian presumably had access to company ledgers and other records that could have corroborated his explanation of the $34,000.00 "officer's salary" entry, no such evidence was proffered. There was testimony, furthermore, that on prior income statements the "officer's salary" item referred to Brian's salary alone. The trial court did not clearly err by finding that the "officer's salary" reference in the August 1997 statement did the same.

Brian's other objections seem premised on misunderstandings of the trial court's order. He objects, for instance, to the trial court's purported refusal to allow him to deduct depreciation expenses from his 1997 income. The August 1997 income statement, however, on which the commissioner and trial court relied, includes the year-to-date deduction for depreciation that Brian claimed. The court's refusal to allow any deductions, including depreciation, for the final four months of that year had nothing to do with depreciation as such, but stemmed rather from the court's conclusion that the income from which those deductions should be made had been deferred.

Similarly, Brian contends that even if his income was $61,928.33 ($34,000.00 plus $27,928.33), as the trial court determined, an annual income of that amount would not be a substantial change from his annual income at the time of the original support order and thus would not justify the modification of his support obligation. As explained above, however, the trial court determined that Brian's income was $61,928.33 for eight months of 1997, not for the entire year, and calculated Brian's monthly income accordingly. Brian does not dispute that, given the monthly income determined by the trial court, which we have found to have been within the court's discretion, the modification of his support obligation was appropriate.

In sum, Brian's motion to modify his child-support obligation coincided with an unusual period for his logging and milling businesses when their expenses had increased but their incomes either had not yet begun or had been put on hold. The trial court did not abuse its discretion by refusing to lower Brian's support obligation on the basis of those unusual circumstances. Nor did the trial court err by finding that, immediately prior to the transitional phase of Brian's business, his income had increased enough to warrant a modification of the 1995 support order. Business records compiled before the litigation and for other purposes support that finding notwithstanding Brian's denials. For these reasons, we affirm the December 23, 1998, order of the Henderson Circuit Court.

ALL CONCUR.