**Todd Curtis HAWKINS, Appellant**

v.

**Amie Sue HAWKINS (Now Newell), Appellee.**

No. 2013–CA–001297–ME.

Court of Appeals of Kentucky.

June 20, 2014.

Brooks Stumbo, Richmond, KY, for appellant.

Sean M. Pierson, Richmond, KY, for appellee.

Before ACREE, Chief Judge; MAZE and THOMPSON, Judges.

*OPINION*

ACREE, Chief Judge:

Todd Hawkins appeals from the Madison Circuit Court's May 7, 2013 order, amended on June 25, 2013, modifying child support. We must determine if the family court properly calculated Amie Hawkins's (now Newell) income for child support purposes. We affirm.

Todd and Amie have two minor children. After several years of marriage, Todd and Amie separated in 2006 and sought a divorce. A decree of dissolution was entered on October 3, 2006. The decree incorporated the parties' separation agreement, which provided that Todd, in lieu of child support, would pay the mortgage, taxes, and insurance ($3,000) on the marital home until it sold.

The home did not sell. Displeased with their arrangement, in 2008 the parties each filed separate motions that, in effect, requested that the family court set child support.[1] The family court heard the matter on August 11, 2009. Todd testified his monthly gross income was $8,947.00. Amie testified she was employed as a registered nurse and received a monthly gross income of $4,983.00. She also disclosed she owned stock in a family corporation and had sold a portion of that stock to her brother. The family court concluded that the stock sale was akin to liquidating assets and therefore did not consider the proceeds she received "income" for purposes of calculating child support.

By order entered August 27, 2009, the family court relieved Todd of his obligation to pay the mortgage and ancillary costs related to the marital residence, but ordered him to pay $1,632.00 per month in

---

1. At some point the Madison County Attorney intervened and sought to collect child support on Amie's behalf.

child support. No appeal was taken from that order.

Three years later, on July 3, 2012, Todd moved to modify his child support obligation, citing a material change in circumstances related to his income and the children's child-care expenses. In response to interrogatories issued by Todd, Amie produced her 2010 and 2011 tax returns.[2] In 2010, in addition to her wages, Amie reported $9,404.00 in capital-gains income and $89,110.00 in partnership income. Similarly, she reported on her 2011 tax return $9,718.00 in capital-gains and $103,895.00 in income from a family partnership. Amie also provided a letter dated July 24, 2012, from her certified public accountant, Seth Atwell, explaining her interest in the limited partnership and the nature of the partnership income she reported to the IRS:

> Joe A. Newell Properties, LTD is a family limited partnership. The entity owns both investment and commercial real estate. The company was organized by [Amie's] father, Joe A. Newell, in 1998 as part of his estate plan. Mr. Newell wanted to centralize the management of his real estate properties and begin passing them on to his heirs through incremental, annual gifting of interest in his family limited partnership.

> At present, [Amie] owns 30.21854% interest in Joe A. Newell Properties, LTD. She is a limited partner and, as such, cannot participate in the management of the company. She has no control over business decisions and does not receive a salary from the entity. [Amie] is simply a passive investor.

> The limited partnership is generally profitable each year. Only management of the company has the right to decide whether any of the profits will be dis-

tributed to entity partners. [Amie] has no control over the entity in this respect. However, she is required to report and pay tax on her 30.21854% of the entities profits each year (regardless of whether she receives any money from the company). To mitigate this tax burden, it is generally the policy of the entity's management to distribute enough cash annually to the partners to cover their federal and state tax liabilities. Again, this is not a requirement, and [Amie] has no control over whether she actually receives a distribution from the company.

(R. at 118).

His pending motion notwithstanding, Todd filed a second motion to reduce/modify child support on February 4, 2013. Todd alleged Amie's 2010 and 2011 tax returns revealed she was making far in excess of the $4,983.00 monthly salary reported in 2009, and speculated that Amie willfully and deliberately concealed her increased income.

The motion was heard on April 22, 2013. Todd, Amie, and CPA Atwell testified. Unfortunately, the portion of the hearing containing their testimony was not made a part of the record. Todd characterizes the testimony regarding Amie's interest in the limited partnership as consistent with Atwell's July 24, 2012 letter. Additionally, according to Todd's rendition of the hearing, after being read the legal definition of income related to child support, Atwell admitted that Amie's partnership income seemed to meet the definition.

On May 7, 2013, the family court's order modifying child support was entered. It provided, in part, as follows:

> [Todd] is entitled to a re-calculation of his child support obligation based on . . . his new salary. Check stubs provided by [Todd] indicate that his gross month-

---

**2.** At the time, Amie's 2012 tax return had not yet been completed.

ly salary is $7,513.38. The 2011 tax return introduced into evidence at the hearing indicates that [Amie's] income is $5,575.60 per month. That total represents her salary from the University of Kentucky plus the $9,718.00 in capital gains and interest she earned that year, divided by twelve months. [Amie] also provides medical and dental insurance on the children in the amount of $62.95 per month.... [Amie] employs a nanny for the minor children at a cost of $150 per week during the school year and $300 per week during the summer. The children have always had the benefit of a nanny throughout their lives.

(R. at 210). Utilizing these figures, the family court reduced Todd's child support obligation to $1,403.88 per month. The order made no mention of Amie's share of limited partnership income she was required to report on her tax returns.

On May 17, 2013, Todd filed a CR [3] 59.05 motion to alter or amend the order to address the issue of Amie's partnership income. Todd asserted the family court had failed to consider Amie's income generated by her ownership in the limited partnership. The family court heard argument on Todd's motion on June 24, 2013. During the hearing, the family judge stated, without equivocation, that he did not ignore Amie's partnership income. The family judge explained he gave the issue great consideration but concluded, under the circumstances of this case, that it should not be counted as income for child support purposes. The family court entered an order on July 16, 2013, denying Todd's motion. Todd appealed.

■ The family court enjoys broad discretion "in the establishment, enforcement, and modification of child support." *Artrip*

*v. Noe*, 311 S.W.3d 229, 232 (Ky.2010). We review child-support decisions only for an abuse of that discretion. *Commonwealth, Cabinet for Health and Family Services v. Ivy*, 353 S.W.3d 324, 329 (Ky. 2011). An abuse of discretion occurs where the family court's decision is "unreasonable, unfair, arbitrary or capricious." *Caudill v. Caudill*, 318 S.W.3d 112, 115 (Ky.App.2010).

Todd's sole argument on appeal is that the family court abused its discretion when it refused to consider Amie's partnership income when calculating her total income for child support purposes. Todd frames the issue as whether "income generated from an ownership interest in a limited partnership should be considered income under KRS [4] 403.212 for purposes of determining child support." (Appellant's Brief at 3). As a general inquiry, we must answer that question with a resounding "maybe." Our answer is not intended as flippant; however, without context the question cannot be answered in the affirmative or in the negative. Depending upon the context, either answer could be correct. When we supply context in the form of the Internal Revenue Code and the specific facts of this case, we answer the question in the negative.

Todd's argument is based on the premise that there is no legal distinction for child support purposes "between Amie's wages and capital gains [constituting 'gross income' under KRS 403.212(2)(b) ], and the income she receives from her ownership interest in a partnership (*i.e.* Line 17 Income [reported on her Form 1040] )." (Appellant's Brief at 6). There is no evidence Amie "received" any income from the partnership. To the extent Todd refers to the *allocation* of $103,895.00 in partnership income to Amie (*i.e.,* Form

---

3. Kentucky Rules of Civil Procedure

4. Kentucky Revised Statutes

1040, Line 17), he is in error; there is a significant difference.

KRS 403.212(2)(c) defines "gross income" from "joint ownership of a partnership" as "gross receipts minus ordinary and necessary expenses required for ... business operation." However, "the statute recognizes taxation and child support serve different purposes" and cautions against the wholesale adoption of taxable income listed on a tax document. *Snow v. Snow*, 24 S.W.3d 668, 672 (Ky.App.2000). "Income ... [from] operation of a business shall be carefully reviewed to determine an appropriate level of gross income available to the parent to satisfy a child support obligation." KRS 403.212(2)(c). The statute burdens the family court "with the unenviable task of distinguishing between [business] taxable income and what may be called [the party's] disposable income." *Snow*, 24 S.W.3d at 672. The family court deftly handled the task in this case and reached the correct result.

At all relevant times, Joe A. Newell Properties was a limited partnership, and Amie was a limited partner. Understanding the correctness of the family court's holding requires an understanding of federal taxation of partnerships.

All partnerships are legal entities subject to regulation and tax collection by the Internal Revenue Service.

> [E]very domestic partnership must file a return of partnership income under section 6031 (partnership return) for each taxable year on the form prescribed for the partnership return.

26 C.F.R.[5] § 1.6031(a)–1(a). The form prescribed for the partnership return is known as Form 1065.[6] Form 1065 is known as an "information return" because the partnership itself is obligated only to provide information to the IRS, not to pay the tax burden. Actual payment of the tax is each partner's responsibility to bear in accordance with the partnership agreement.[7]

All partnership tax items (income, gain, loss, deductions, and credits) "flow directly through to the individual partners ... and are reported on each individual's personal income tax return." Kentucky Practice Corporation Law, *Available Business Entities—Limited Partnership* § 1.4. The amount each partner will pay in federal tax will depend on circumstances unique to each partner and those circumstances include the amount of partnership tax items allocated to him or her, the partner's own personal income tax bracket, and the effect of tax items the partner reports other than those from the partnership. To understand how the IRS concept of income differs from that expressed in KRS 403.212, we must return to the partnership information return, Form 1065, and specifically to Schedule K.

The cumulative allocations to all partners can be found on Schedule K of Form 1065. *See* IRS Form 1065. These allocations are categorized and grouped, beginning on line 1 of Schedule K (allocating partnership gain or loss, beginning with ordinary business income), proceeding to line 12 (which begins identifying deductions), and then to line 15a (which begins a

---

**5.** Code of Federal Regulations.

**6.** "The partnership return must contain the information required by the prescribed form and the accompanying instructions." 26 C.F.R. § 1.6031(a)–1(a)(2).

**7.** "A partner's distributive share of any item or class of items of income, gain, loss, deduction, or credit of the partnership shall be determined by the partnership agreement, unless otherwise provided by section 704 and paragraphs (b) through (e) of this section. For definition of partnership agreement see section 761(c)." 26 C.F.R. § 1.704–1(a).

section on credits). But none of these lines indicates whether the partnership distributed any cash or other property to any of the partners. The cumulative amount of partnership distributions appears on lines 19a and 19b. *Id.*

Schedule K does not provide individualized information regarding each partner—only cumulative information. No doubt this is why the IRS requires partnerships to file Form 1065, including Schedule K, "along with the corresponding Schedules K–1 . . . ." 26 C.F.R. § 301.6011–3(d)(4). Schedule K–1, not Schedule K, tells the IRS which individual partners were allocated which portion of each of the cumulative tax items (whether income, gain, loss, deduction, or credit) represented on Form 1065, Schedule K.

Like Schedule K, every Schedule K–1 separately categorizes income, gain, loss, deductions, and credits, but unlike Schedule K, each Schedule K–1 is specific to each partner. The lines on Schedule K–1, Part III, correspond directly to the lines, referenced above, on Form 1065, Schedule K. Only line 19 of Schedule K–1, Part III, tells what distributions of cash or other property the partner received, if any. Schedules K–1 are delivered to the respective partners so that the partner can transfer to and report allocations on their own tax return, and so that the IRS can determine that the partner's reporting of tax items on his or her Form 1040 mirrors the information the partnership reported to the IRS on Form 1065.[8]

But there is no correlation between allocable tax items which are used to calculate the partner's share of the partnership's tax liability on the one hand, and the cash or property distributed to the partner from the partnership on the other. "*Regardless of whether any distributions [of cash] are made by the partnership,* partners must currently account for their distributive share of all partnership items of income, gain, loss, deduction, and credit." Scott Shimick, 8 Mertens Law of Fed. Income Tax'n § 33:21(Database updated May 2014) (emphasis added). To account for the share of partnership tax items allocated to them, each partner includes only those tax items—income, gain, loss, deduction, and credits, but not distributions [9]—on his or her own personal tax return, Form 1040. 26 U.S.C.A. § 702(a) ("In determining his income tax, each partner shall take into account separately his distributive share of the partnership's . . . income, gain, loss, deduction, or credit[.]"). There is no need for, and the IRS does not

8. In one sense, Schedules K–1 are like the more familiar Forms W–2 because both are used to convey tax information to the IRS and to the individual taxpayer. They are different, however, because a Form W–2 reports, on a single line (line 1, Wages, tips and other compensation), an allocation and distribution of income in identical amounts. Because in a partnership there is no direct correlation between the partner's allocation of income and any distribution of that income he may receive, the IRS purposefully separates the income allocation (reported in various forms on lines 1 through 11) and the income distribution (reported on line 19, Distributions). *Compare* IRS Form Schedule K–1 *with* IRS Form W–2.

9. Distributions of cash or other property are reported on the partner's tax return if the distribution can be "treated as gain from the sale or exchange of [the partner's] partnership interest" and such gains are "reported on Form 8949 and the Schedule D of [the partner's] tax return." IRS Form Partner's Instructions for Schedule K–1 (Form 1065), p. 13. Even less frequently, the distribution must be reported if the partner contributed section 704(c) built-in gain property within the last seven years and the partnership made a distribution of property to the contributing partner other than the contributed built-in gain property. *Id.*, pp. 13–14. Neither circumstance has presented itself in this case.

require, reporting of the actual distribution of cash or property.

It is therefore a mistake to equate the income or gain allocated to a partner for tax purposes with an actual distribution of cash or property. The IRS seeks taxes on the partnership's income, and each partner must pay his or her share of that tax. Generally[10], the IRS does not care whether any of the income allocated to the partner was actually distributed to the partner, only that the partner pay his proportionate share of the tax due on that partnership income. The IRS will tax the partner on his or her full allocation of income or gain even if the partner never receives a dime in cash distributions from the partnership.

The consequence of all this is that nowhere on an individual's tax return, Form 1040, can one find how much cash or property was distributed to the partner from the partnership. That information is contained on the Schedule K–1 which is submitted to the IRS as part of the Form 1065 information return, and which is delivered to each partner. However, the IRS does not require that Schedules K–1 be made a part of the individual partner's tax return, Form 1040.

■ Significantly, Amie's Schedules K–1 are not in the record. These schedules would have identified exactly what distribution of cash or other property was made to her. That may or may not have affected the family court's decision. The only evidence Todd points us to is the $103,895.00 figure on line 17 of Amie's 2011 tax return. This evidence is inadequate to support a modification of the child support obligation.

As noted, KRS 403.212(2)(c) says that to recognize income from joint ownership of a partnership, we begin with "gross *receipts* [.]" There is no evidence in this record that Amie received anything but her proportionate share of tax liability for being a member of a limited partnership. That has no evidentiary value in calculating child support.

We are aware that Amie may have received some distribution from the limited partnership. Without stating that a distribution was actually made in the tax years in question here, CPA Atwell alluded in his letter to the limited partnership's policy to distribute enough cash to mitigate each limited partner's tax burden. Such a distribution, unlike a mere allocation, does represent a "gross receipt" of income. We express no opinion on the effect of a distribution sufficient only to pay a partner's tax burden resulting from participation in a partnership because that issue is not before us.

However, there is no evidence in this record that Amie in fact received any distribution. The $103,895.00 figure on line 17 certainly is not evidence of a distribution or a gross receipt of income. Had Todd obtained a copy of Amie's Schedule K–1 he would have known if Amie, in addition to the *allocation* of income, received a *distribution*. But that is not in the record.

The family court clearly understood its charge to carefully scrutinize and distinguish between Amie's allocated tax burden and income received and at her disposal when calculating Todd's modified child support obligation. Under the facts of this case, the family court did not abuse its discretion when it omitted from the child support calculation the partnership's allocation of tax items to Amie. Accordingly, we affirm the family court's May 7, 2013 order, as amended on June 25, 2013.

10. See footnote 9, *supra.*

MAZE, Judge, Concurs.

THOMPSON, Judge, Dissents and Files Separate Opinion.

THOMPSON, Judge, Dissenting:

Respectfully, I dissent. I agree with the majority's interpretation of the law that in calculating income for child support only the amount distributed to a partner should be considered income. I also agree courts should consider Schedules K–1 to determine whether a party has income from a partnership. I disagree with how the majority has applied its interpretation of the law to resolve this case.

The majority opinion states it is significant that Amie's Schedules K–1 are not in the record, there is no evidence in the record that Amie in fact received any distribution and "[h]ad Todd obtained a copy of Amie's Schedule K–1 he would have known if Amie, in addition to the *allocation* of income, received a *distribution*."

Respectfully, I submit Todd satisfied his burden to obtain this information through his interrogatories and request for production of documents after filing his motion for modification. *See Combs v. Daugherty*, 170 S.W.3d 424, 426 (Ky.App.2005).

Todd propounded interrogatories on Amie seeking to determine the specifics of Amie's income from all sources. While Amie disclosed her gross income from the partnership, Amie discounted this amount as being part of her income for purposes of child support calculations and did not disclose the amount she received as a distribution from the partnership.[11]

Todd specifically requested production of Amie's Schedules K–1 and any income from this source.[12] Amie's response failed to provide her Schedules K–1 and the income they listed.

Because the portion of the evidentiary hearing containing the testimony of the parties and Atwell was not made part of

11. **INTERROGATORY NO. 1:** Please state your gross income from all sources for calendar years 2010 and 2011, including a breakdown of the amount of each type of income received (wages and salary, investment income, etc.). Please include all income regardless of whether it was reported on your income tax returns.
   **ANSWER NO. 1:** 2010 gross income of $163,289.00. However, my gross income from my employment is $52,415.00. The additional income I received is from estate planning arrangements put in place by my father as described in the letter from Seth F. Atwell, CPA. A copy of which is attached hereto.
   2011 gross income of $169,584. However, my gross income from my employment was $52,915.00.
   **INTERROGATORY NO. 2:** Please state your gross income to date from all sources for calendar year 2012, including a breakdown of the amount of each type of income received (wages and salary, investment income, etc.). Please include all income regardless of whether it was reported on your income tax returns.
   **ANSWER NO. 2:** As of December 15, 2012, my gross income was $59,553.34.

**INTERROGATORY NO. 3:** Please state whether you received any payments from any source during 2010, 2011, or 2012 which are not included in your description of income in response to Interrogatories 1. or 2., and if so the amounts and nature of such payments. **ANSWER NO. 3:** None.

12. **REQUEST NO. 1:** Please provide copies of your U.S. and Kentucky income tax returns for tax years 2010 and 2011 as well as copies of any ... K–1 forms ... on which income was reported to you for such years, regardless of whether such income was reported on said returns.

   ...

   **REQUEST NO. 3:** Please provide copies of documentation of any gross income received from all sources for calendar years 2010, 2011, and 2012, including any ... K–1 forms[.]
   **REQUEST NO. 4:** If you received any payments described in Interrogatory No. 3 during 2010, 2011, or 2012, please provide copies of documentation of any such payments.

the record on appeal, it is unclear whether testimony was given only as to the amount of the allocation of the partnership income Amie received as given on her Forms 1040, or if such testimony also included the amount of the distribution of partnership income she received. However, Atwell's letter indicates Amie should have some distribution income to report: "it is generally the policy of the entity's management to distribute enough cash annually to the partners to cover their Federal and state tax liabilities."

The family court did not consider Amie's income from her partnership interest in determining her total income. Todd properly filed a motion to alter, amend or vacate because the trial court failed to make findings as to the amount of Amie's partnership income, and to consider such income in modifying Todd's child support obligation. The family court was required to make a good faith effort at fact finding on this issue after its deficiency was brought to its attention as required by CR 52.04. *Truman v. Lillard,* 404 S.W.3d 863, 867–868 (Ky.App.2012).

We do not know whether the family court rejected any consideration of Amie's income from the partnership because it rejected using the allocation of income from the partnership listed on her Form 1040 as income (as does the majority opinion) or because it determined any amount Amie received from a partnership distribution should not be considered income. If the former, the family court needed to make additional findings as to the amount Amie received as part of a partnership distribution to calculate her income. If the later, it abused its discretion by failing to consider this amount income.

I would reverse and remand for the family court to make specific factual findings as to what income Amie received as a distribution from the partnership and use this amount in calculating her total income before determining the amount of child support.

Accordingly, I dissent.